**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**NEW YORK UNIVERSITY,**

      **Plaintiff,**

   - against -

**E.PIPHANY, INC. and SSA GLOBAL TECH. INC.,**

      **Defendants.**

**OPINION & ORDER**

**05 Civ. 1929 (LTS) (RLE)**

---

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. BACKGROUND

Plaintiff New York University ("NYU") filed this patent infringement action against defendant E.piphany, Inc., ("E.piphany") on February 8, 2005. The complaint was amended on October 31, 2005, to include defendant SSA Global Technologies, Inc., when that company acquired E.piphany. NYU alleges E.piphany's software infringes one of NYU's patents, U.S. Patent No. 6,236,978 ("the '978 patent"). NYU has filed a motion to compel responses to certain outstanding discovery requests. The discovery dispute which led to the instant motion has been ongoing before the undersigned since November 2005.

In its complaint, NYU challenged forty of E.piphany's products but referred only to one product by name, Interaction Advisor. To date, E.piphany has produced documents only for Interaction Advisor and none of its other products. NYU asks the Court to compel E.piphany to produce all documents responsive to Plaintiff's First Set of Requests for Production of Documents to Defendant E.Piphany, Inc. served August 15, 2005. Plaintiff NYU's Memorandum in Support of its Motions ("NYU Mem.") at 1. Specifically, NYU focuses on the following areas of production which E.piphany has withheld: 1) software architecture documents for Interaction

Advisor; 2) the source code and software architecture documents for E.piphany's products: E.piphany Real-Time, E.piphany Sales and Service, E.piphany Customer Relationship Backbone, E.piphany Marketing/E-Marketing, and E.piphany E6 and E6.5 Suite which are related to E.piphany's Interaction Advisor; 3) the source code and software architecture documents for commercial versions of Interaction Advisor other than 6.5; and 4) Preliminary Invalidity Contentions and supporting documents, if any, relating to claims 1, 15, 25-34 and 37 of the '978 patent. **Id**. at 3. Consistent with this Court's previous oral rulings, the motion is **GRANTED**, in part, and **DENIED**, in part.

NYU has also asked the Court to adjourn the parties' claim construction schedule. However, E.piphany has filed a motion to limit claim construction before Judge Swain. As Judge Swain will be reviewing the claim construction process in this case, this Court will not rule on that aspect of NYU's motion at this time.

## II. DISCUSSION

### A. Production of Documents for Products Other than Interaction Advisor

E.piphany opposes production related to its other products primarily because it believes that NYU has failed to provide sufficiently detailed Preliminary Infringement Contentions ("PICs") under Patent Local Rule 3-1 for those products. Defendants' Memorandum of Law in Opposition to NYU's Motion ("E.piphany Mem.") at 7. Judge Swain issued a scheduling order which provides that, for discovery, the following Patent Local Rules of the United States District Court for the Northern District of California apply: 3-1, 3-2, 3-3, and 3-4. Pre-Trial Scheduling Order, July 1, 2005, at 6. Under these rules, plaintiffs are to provide PICs to better define the scope of discovery. Patent Local Rule 3-1 states:

> Not later than 10 days after the Initial Case Management Conference, a party claiming patent infringement must serve on all parties a "Disclosure of Asserted Claims and Preliminary Infringement Contentions" . . . which shall contain the following information: . . .
> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. . . .
> (c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 USC § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

The rule is "essentially a 'discovery device' intended to streamline the discovery process by 'tak[ing] the place of a series of interrogatories that defendants would likely have propounded.'" **Renesas Tech. Corp. v. Nanya Tech. Corp.**, 2004 WL 2600466, at *2 (N.D. Cal. Nov. 10, 2004) (*quoting* **Network Caching Tech., LLC v. Novell, Inc.**, 2002 WL 32126128, at *3-4 (N.D. Cal. Aug. 13, 2002)). The plaintiff must include all facts known to it that could support its claim of infringement. **Id**. "[T]he standard of [Federal Rule of Civil Procedure ("FRCP")] 11 prefiling inquiry establishes a minimum level of detail that Patent LR 3-1 requires." **Network Caching**, 2002 WL 32126128, at *4. "FRCP 11 requires that a plaintiff compare an accused product to its patents on a claim by claim, element by element basis for at least one of each defendant's products." **Id**. at *5. In order to provide such detail, parties often demonstrate that they have done what is called "reverse engineering," but that is not required if the plaintiff has an equivalent way of showing the level of detail the rule requires. **Renesas**, 2004 WL 2600466, at *2. The "party claiming infringement does not have to reverse engineer every one of a defendant's products. Instead, a plaintiff must only demonstrate 'why it believed before filing the claim that it had a reasonable chance of proving infringement.'" **Id**. (*quoting* **View Eng'g,**

**Inc. v. Robotic Vision Sys., Inc.**, 208 F.3d 981, 986 (Fed. Cir. 2000)). In **Renesas**, the plaintiff did reverse engineer three products, and then provided declarations pointing out why reverse engineering for the others would be burdensome, expensive, and provide no additional information. **Id**. at *4. The court found the PICs to be adequate. **Id**.

In some situations, a plaintiff must first obtain information from the defendant in order to provide sufficiently detailed PICs. In **Network Caching**, for example, the defendants moved to strike plaintiff's PICs and dismiss the complaint for failure to comply with Patent LR 3-1. 2002 WL 32126128, at *4. The court ordered the plaintiff to amend its PICs after receiving more discovery from defendants, finding that the only way to be more specific as to their claims was to analyze the source code which was in the defendant's sole possession. **Id**. at *7. Similarly, in **Renesas**, the court refused to strike plaintiffs' PICs and found that "[r]equiring Renesas to prove more . . . seems inappropriate, as it alleges it has not yet received the discovery necessary to run the voltage tests properly." 2004 WL 2600466, at *5.

Plaintiffs in computer software infringement cases apparently often find themselves in this particular "Catch-22:"

> Software cases present unique challenges for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself. From this manifestation, plaintiffs must somehow divine whether the defendants' code infringes. Although defendants vigorously and rightly guard their source code, until plaintiffs have access to it, plaintiffs are typically unable to give highly specified infringement contentions. To the extent defendants are given vague infringement contentions, they are hampered in their ability to prepare their defense.

**Am. Video Graphics, L.P. v. Elec. Arts, Inc.**, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). The court may therefore require a defendant to provide source code so that the plaintiff may be more

specific about its claims.  **Id**.  The plaintiffs, of course, may first be required to demonstrate that they exhausted other ways of exploring potential infringement.  *See* **Connectel, LLC v. Cisco Sys., Inc.**, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005) ("The plaintiff in [**Am. Video Graphics**] did not just allege infringement of hundreds of video games, submit those games' user manuals as evidence, and expect to narrow its claims upon the receipt of source code.").  *See also* **Network Caching**, 2002 WL 32126128, at *5.

In a conference before this Court on November 8, 2005, NYU made an application to compel the same discovery requested in the current motion, and E.piphany raised the same concerns about NYU's PICs.  NYU had provided detailed PICs for six of E.piphany's products, including Interaction Advisor.  The undersigned reviewed the PICs for the other thirty-six products and questioned the adequacy of NYU's PICs for products without ruling on whether they were inadequate as E.piphany had not made any formal application to strike NYU's claims or compel more detailed PICs.  While a plaintiff is not required to reverse engineer all the accused products, the courts have required other evidence of infringement in place of reverse engineering.  For all other "accused products," NYU simply referred to the PIC charts for Interaction Advisor, and then contended that E.piphany had not produced sufficient information for NYU to complete the PIC charts.  *See* Letter from NYU, November 1, 2005, Exh. A.  In some cases, plaintiffs request specific *pieces* of source code for a particular product.  In comparison, NYU's request for all documents and complete source code for all forty products was strikingly broad and it has not made a showing of its alternative efforts to develop infringement contentions for those products for which it has not provided detailed PICs.

At the same time, E.piphany has the responsibility to produce information that NYU can

5

use to substantiate its claims. Where a plaintiff's PICs are found to be adequate, the court will not stay discovery. **Teknowledge Corp. v. Akamai Tech., Inc.**, 2003 WL 23861926, at *1 (N.D. Cal. Oct. 21, 2003) ("Plaintiff has sufficiently identified the accused products, indicated where the elements of the asserted claims are found and specified where means-plus-function elements are found."). The court in **Teknowledge** cited Patent Local Rule 2-5, which was not specifically incorporated into Judge Swain's order but applies to discovery under the rules and provides that "it shall not be a legitimate ground for objecting to an opposing party's discovery request . . . that the discovery request is premature . . . or otherwise conflicts with, these Patent Local Rules." **Id**. E.piphany has not moved to strike NYU's PICs or compel further detail, but instead has continued to raise lack of detail as a defense to discovery.

At the November 8, 2005 conference, the parties discussed this discovery dispute and came to an agreement: E.piphany would produce responsive documents for those six products for which NYU had presented more detailed PICs. These products were presented to the Court as part of a "suite" of documents for which Interaction Advisor was the backbone. *See* NYU Mem. at 18; E.piphany Mem. at 3. This Court then issued a ruling requiring E.piphany to produce responsive documents for Interaction Advisor and "related products." Apparently, E.piphany then did produce documents, but only those pertaining specifically to Interaction Advisor. At the time, the parties seemed to agree about which other products were subject to this order, but the agreement proved illusory.

As noted, NYU has focused its discussion here on the five products for which it provided more detailed PICs and which have been described as related to Interaction Advisor. E.piphany does not respond directly to the contention that this Court already ordered it to produce

6

documents for those five products or that the parties agreed to their production. Instead, E.piphany argues that production on any product other than Interaction Advisor is unnecessary or unwarranted. First, E.piphany asserts that NYU's sole infringement contention pertains to "the functionality provided by [Interaction Advisor]." E.piphany Mem. at 6. E.piphany than argues that all forty products NYU has accused in its complaint may be sold in conjunction with Interaction Advisor and that producing the source code for all forty would be both burdensome and inappropriate given that NYU has not provided detailed infringement contentions for all those products. **Id**. E.piphany does not respond to NYU's contention that the five products it has listed are "related to Interaction Advisor."

E.piphany also argues that the source code for its "unrelated" products is a trade secret and that NYU carries the burden to demonstrate that production of the source code is necessary and relevant to this action. **Id**. at 7. *See* **Synopsis, Inc. v. Nassda Corp.**, 2002 WL 32749138, at *1 (N.D. Cal. Sept. 16, 2002) (finding that plaintiff had not demonstrated that the source code beyond the date of the pertinent patent application was both relevant and necessary and denying plaintiff's motion to compel). Again, E.piphany has not distinguished between the five products referred to in the November 8, 2005 conference as "related" to Interaction Advisor, and appears to lump all its other products in this "unrelated" category. Confidential information and trade secrets are covered by the protective order both parties have signed. Furthermore, this Court's previous order reflecting the parties' agreement that E.piphany would produce responsive documents only for those products for which NYU had presented detailed PICs limits the scope of production, undermining the claim of burden by E.piphany.

Consistent with this Court's November 8, 2005 order, NYU's motion to compel

7

production of responsive documents for the following products is **GRANTED**: E.piphany Real-Time, E.piphany Sales and Service, E.piphany Customer Relationship Backbone, E.piphany Marketing/E-Marketing, and E.piphany E6 and E6.5 Suite which the parties represented as related to Interaction Advisor and for which NYU has presented detailed PICs. However, NYU's motion to compel responsive documents for the other E.piphany products for which NYU has not provided detailed PICs is **DENIED**.

B.   **Outstanding Production for Interaction Advisor**

   1.   **Software Architecture Documents**

At a conference on January 11, 2006, NYU complained that while E.piphany had produced source code for Interaction Advisor, it had not produced any of the "software architecture documents" which would facilitate analysis of the source code. E.piphany argues that to the extent any software architecture documents exist, those documents have been produced. E.piphany Mem. at 5. NYU argues that E.piphany has produced one document that "approach[es] the software architecture level of detail," which according to their expert Dr. Robert Grossman, indicates there are other such documents which E.piphany has failed to produce. Declaration of Dr. Robert Grossman in Support of NYU's Motion to Compel, ¶ 12. E.piphany contends that, as a small company, it has not had the time or resources to develop such documentation of the design process. E.piphany Mem. at 5. E.piphany submits a declaration from Maksim Kouznetsov, current development manager at SSA Global Technologies and former Manager of Analytics within Interaction Advisor at E.piphany. Declaration of Maksim Kouznetsov in Opposition to NYU's Motion, ¶ 6. He states that he has worked on the design of Interaction Advisor since 1998 and that defendants did not "create the complex documentation

8

system hypothesized by Dr. Grossman." **Id**.

At the January 11 conference, this Court ordered E.piphany to produce any such documents to the extent they exist. Therefore, with respect to such documents, NYU's motion is **GRANTED**. Should it later be discovered that other documents exist, but were not produced, E.piphany should note that "where . . . the nature of the alleged breach of a discovery obligation is the non-production of evidence, a District Court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of a trial . . . , to declare a mistrial . . . , or to proceed with a trial with an adverse inference instruction . . . [which] may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence." **Residential Funding Corp. v. Degeorge Fin. Corp.**, 306 F.3d 99, 113 (2d Cir. 2002).

2.  **Versions of Interaction Advisor Other than 6.5**

E.piphany has refused to produce source code of versions of Interaction Advisor sold prior to the date it received actual notice of NYU's claim of infringement, December 11, 2003. E.piphany Mem. at 8. E.piphany argues those versions are not relevant because it cannot be held liable for infringement before having actual notice since NYU has alleged indirect infringement which requires proof that defendants "knowingly induced" its customers' infringement. **Id**. *See* **Manville Sales Corp. v. Paramount Sys., Inc.**, 917 F.2d 544, 553 (Fed. Cir. 1990). NYU contends it has also alleged direct infringement and that knowledge of its patent is imputed to potential infringers on the date the patent was issued. Plaintiff NYU's Reply Memorandum in Further Support of its Motions at 7. *See* **Texas Digital Sys., Inc. v. Telegenix, Inc.**, 308 F.3d

1193, 1219-20 (Fed. Cir. 2002). NYU's Amended Complaint does allege both direct and indirect infringement. Amended Complaint ¶ 13-14. Whether NYU will be able to meet the burden of proof of direct infringement at trial should not be confused with E.piphany's responsibilities to produce materials in discovery. NYU's motion with respect to other versions of Interaction Advisor is **GRANTED**. E.piphany must produce source code and other documents for versions of Interaction Advisor dating back to the date NYU's patent was issued: May 22, 2001.

C.   **E.piphany's Preliminary Invalidity Contentions**

NYU asks the Court to compel E.piphany to provide Preliminary Invalidity Contentions and supporting documents relating to claims 1, 15, 25-34 and 37 of the '978 patent. At this point, E.piphany has provided such contentions solely for claim 25, which is the only claim E.piphany maintains NYU has properly asserted. E.piphany Mem. at 8. E.piphany points out that NYU's Preliminary Infringement Contentions are only detailed as to claim 25, obviating E.piphany's responsibility to respond with further Preliminary Invalidity Contentions. **Id**. For every other claim, NYU's PICS refer to claim 25 and states that E.piphany has not produced sufficient documents to allow NYU to provide further detail. Declaration of Timur E. Slonim in Support of NYU's Motion to Compel ("Slonim Decl."), Exhs. A-G.

NYU does not explain why claims 1, 15, 25-34, and 37 are targeted here. Nor does NYU explain how E.piphany is expected to respond to its additional claims despite the lack of detail in NYU's PICs. NYU merely points out that E.piphany has treated claims other than claim 25 as properly asserted by stating that claims "4, 5, 23, 34, 38, and 39 of the '978 Patent are also invalid" in E.piphany's Preliminary Invalidity Contentions submitted for claim 25, without stating the reasons for their assertion of invalidity. **Id**., Exh. 11.

Pursuant to this order, NYU should receive the additional production it has been seeking on the five additional products mentioned above. Should NYU seek to amend its infringement contentions as a result of receiving this information, E.piphany will then be obligated to respond and amend its corresponding invalidity contentions. At this point, therefore, NYU's motion to compel E.piphany's additional Preliminary Invalidity Contentions is **DENIED** without prejudice.

### III. CONCLUSION

For the foregoing reasons, NYU's motion to compel production of responsive documents for the following products is **GRANTED**: E.piphany Real-Time, E.piphany Sales and Service, E.piphany Customer Relationship Backbone, E.piphany Marketing/E-Marketing, and E.piphany E6 and E6.5 Suite which the parties represented as related to Interaction Advisor and for which NYU has presented detailed PICs. However, NYU's motion to compel responsive documents for the other E.piphany products for which NYU has not provided detailed PICs is **DENIED**.

NYU's motion with respect to the production of documents pertaining to versions of Interaction Advisor is **GRANTED**: E.piphany must produce source code and other documents for versions of Interaction Advisor dating back to the date NYU's patent was issued: May 22, 2001. NYU's motion is also **GRANTED** with respect to software architecture documents to the extent they exist. However, NYU's motion to compel in regard to E.piphany's Preliminary Invalidity Contentions is **DENIED** without prejudice.

**SO ORDERED this 6th day of March 2006**
**New York, New York**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

11